UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JUAN V. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV2045 HEA |
| | ) | |
| GREGORY HANCOCK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Hancock's Motion for Summary Judgment, [Doc. No. 81]. Plaintiff opposes the Motion, and the issues are fully briefed. For the reasons set forth below, the Motion is granted.

## Introduction

Plaintiff's Amended Complaint alleges claims pursuant to 42 U.S.C. § 1981. Plaintiff's first claim in the amended complaint alleges Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment by his alleged use of excessive force. Plaintiff's second claim alleges that Defendant was deliberately indifferent to his serious medical needs. Plaintiff's claims are brought against Defendant in his individual capacity.

Defendant now moves for summary judgment on the ground of qualified immunity.

## Facts and Background

Defendant has submitted a Statement of Uncontested Facts in support of his Motion for Summary Judgment. In response, Plaintiff has submitted an opposition to the Motion and his statement as to which facts are undisputed, disputed and additional to Defendant's facts.

In July of 2009, Plaintiff was confined in Housing Unit 1 at Southeast Correctional Center ("SECC") in Charleston, MO. Housing Unit 1 is single-cell, long-term administrative segregation. Offenders in Housing Unit 1 generally "[h]ave histories of assaults and escapes or [it] is unsafe for them to be in a cell with another offender."

In July of 2009, Defendant was working as a Corrections Officer II in Housing Unit 1 at SECC. As the unit supervisor, Defendant was responsible for the safety and security of the offenders, as well as the other officers in the unit. It was his job was to ensure that the area he supervised as a whole was maintained properly and was secure.

On July 2, 2009, around 7:00 p.m., Plaintiff threw liquid at Corrections Officer Jeffrey Loomes through the food port of his cell as Officer Loomes was passing out toilet paper and soap. It is Plaintiff's understanding of the MDOC policies that offenders are not permitted to throw liquid on staff. Officer Loomes

reported to Defendant that Plaintiff had assaulted him by throwing liquid on him and that the food port was open. Defendant responded to Plaintiff's cell, assessed the situation, and saw that the food port was indeed open. This was a safety and security concern as the offender could have grabbed staff, assaulted staff, or thrown items through the open food port.

Defendant testified that he directed Plaintiff to move away from the food port, so that it could be secured. Plaintiff denies he was directed to move away from the food door.

As Defendant attempted to close the food port, Plaintiff reached his hand out. Defendant Hancock attempted to utilize pepper spray, but it didn't work. Defendant attempted to secure the food port. During this attempt, Plaintiff's finger was caught and a portion of his finger was severed. The spontaneous use of force was recorded by the institutional camera located in the Upper B wing walk of Housing Unit 1.

Immediately following the use of force, Defendant went to find his supervisor, Lieutenant Paul Luber, to report the incident. Defendant reported that he and Officer Loomes had been assaulted by Plaintiff, that the food port was still open, and that Plaintiff needed to be seen by the medical personnel. Defendant believes he told Lt. Luber that Plaintiff was injured, although offenders are always

assessed by medical following a use of force regardless of whether or not there is a visible injury.

A movement team was necessary to remove Plaintiff from his cell to a safe and secure examination area because he had already assaulted two staff members and it would be unsafe to send medical personnel into Plaintiff's cell. Before the movement team can remove an offender from his cell, the following steps must occur: the shift supervisor has to "make contact with a duty officer to get authorization to utilize a movement team;" then specially trained personnel must be selected to be on the team; those people must be relieved or removed from their assigned posts; the team members must meet in one location and be briefed, dress out in special gear, move to the area where the offender is located, and receive direction as to the nature of their duties for the removal. Duty Officer CS/II Richard Gaines gave approval for the utilization of the movement team. A movement team was assembled by Lt. Luber to remove Plaintiff from his cell to a restraint bench where he could be assessed by medical personnel.

Plaintiff received initial medical treatment from LPN Brenda Thurmond around 8:00 p.m. and then was transported to the medical unit for further treatment. As a result of the use of force, Plaintiff received injuries in the form of scrapes, bruises, and a severed left ring finger. Plaintiff did not receive any injury

as a result of Defendant's attempt to pepper spray him as the pepper spray did not discharge properly.

On July 2, 2009, Lt. Luber completed a use of force packet for Defendant's spontaneous use of force. Plaintiff received two Conduct Violations as a result of this incident: one for assaulting Officer Loomes and one for assaulting Defendant.

On July 6, 2009, the warden of SECC requested that the Inspector General's Office investigate this incident as a possible assault of an employee by an inmate. On July 7, 2009, a Use of Force Committee reviewed the use of force by Defendant involving pepper spray and physical force on Plaintiff and determined that the use of force was within policy and not excessive. The Inspector General's Office conducted an investigation into this incident to determine if Plaintiff assaulted Defendant. On October 29, 2009, the investigator concluded that there was sufficient evidence to support the allegation that Plaintiff assaulted Defendant. On December 16, 2009, the Inspector General's Office referred the case for prosecution to the Mississippi County Prosecuting Attorney.

## Discussion

### Summary Judgment Standard

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and

inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson* 477 U.S. at 256; *Littrell ,* 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed. R. Civ. P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is

genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Wilson v. Int'l Bus. Mach. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotations omitted). *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003). A party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Assocs. v. Jung* 422 F.3d 630, 638 (8th Cir. 2005) Summary judgment is proper if a plaintiff fails to establish any element of the prima facie case. *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 444 (8th Cir. 1998) (citing *Weber v. American Express Co.*, 994 F.2d 513, 515-16)). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary

judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-27(8th Cir. 2007). Summary judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kan. City Mo. Sch.Dist.,* 437 F.3d 797, 801 (8th Cir. 2006).

The Eighth Circuit Court of Appeals recently restated the applicable standards relating to summary judgment as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

The Eighth Circuit also recently explained what the nonmoving party must do to meet its obligation to show that disputed facts are material:

> In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying "facts that might affect the outcome of the suit." Anderson [v. Liberty Lobby, Inc.], 477 U.S. [242] at 248 [(1986)]. The nonmoving party relation to the legal elements of her claim. Id.; Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006).

*Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). Thus, to survive a motion for summary judgment, the nonmoving party must "explain the legal significance of her factual allegations beyond mere conclusory statements importing the appropriate terms of art," and provide a "meaningful legal analysis explaining how, under the applicable law, the disputed facts might prove [her] . . . claim at trial." *Id*. at 752 (internal citations omitted).

## Qualified Immunity

**Excessive Force**

Defendant argues that the Plaintiff's claims for damages against him are barred by the doctrine of qualified immunity. Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages, unless their conduct violates clearly established statutory or

constitutional rights of which a reasonable person would have known. See, *Wallingford v. Olson*, 592 F.3d 888, 891 (8th Cir.2010); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Young v. Harrison*, 284 F.3d 863, 866 (8th Cir.2002); *Winters v. Adams*, 254 F.3d 758, 766 (8th Cir.2001).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." *Wilson*, at 614. The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). As a consequence, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir.1996).

In determining whether a public official has violated a clearly established constitutional right, the reviewing Court has discretion to determine which prong

of the two-part test to address first. See, *Heartland Academy Community Church v. Waddle*, 595 F.3d 798 (8th Cir. 2010), citing *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 818 (2009).

The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences. In determining whether an officer is entitled to qualified immunity, the Court asks: (1) whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that the official's conduct violated a constitutional right; and (2) whether the asserted constitutional right is clearly established. The Court may address either question first. If either question is answered in the negative, the public official is entitled to qualified immunity. To determine whether a right is clearly established the Court asks whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Wallingford v. Olson*, 592 F.3d at 892 (internal citations and quotations omitted).

The Eighth Circuit Court of Appeals has very recently articulated the standard for determining the question of qualified immunity. The question

> involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194,

201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (holding that *Saucier*'s two-step sequence is not mandatory). "Under the rule established in *Pearson,* we have the discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.' " *Fields v. Abbott,* 652 F.3d 886, 890 (8th Cir.2011) (quoting *Pearson,* 555 U.S. at 236, 129 S.Ct. 808).

When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). "The Supreme Court recently clarified that the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." *Williams v. Jackson,* 600 F.3d 1007, 1012 (8th Cir.2010) (citing *Wilkins v. Gaddy,* 559 U.S. 34, 130 S.Ct. 1175, 1178–79, 175 L.Ed.2d 995 (2010) (per curiam)).

*Santiago v. Blair,* 707 F.3d 984, 989-90 (8th Cir. 2013).

Defendant's actions were in response to Officer Loomes' report that Plaintiff had assaulted him through the food port. Upon seeing the food port open, Defendant attempted to close it, in accordance with the policies of the institution. Although Plaintiff disputes that he was told by Defendant to move away from the port, it matters not, since Plaintiff was aware that it was against institution policies to throw things through the food port. It is a matter of safety and security concern

for the food port to remain closed when not being used for its intended purpose, as an offender can grab staff, assault staff, or throw items through the open food port. Likewise, because Plaintiff's hand was through the food port, and Defendant was aware of the alleged assault on Officer Loomes, Defendant was within his authority to act accordingly in attempting to pepper spay Plaintiff and attempt to close the food port quickly.

**Deliberate Indifference of Medical Need**

Plaintiff also claims Defendant violated his right to be free from cruel and unusual punishment by deliberate indifference to his serious medical need.

In order to avoid summary judgment, Plaintiff must demonstrate that he suffered from an objectively serious medical need and that Defendant actually knew of but deliberately disregarded the need. *Johnson v. Hamilton,* 452 F.3d 967, 972–73 (8th Cir.2006). A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir.1995) (internal quotation marks and citation omitted).

Plaintiff's Amended Complaint alleges that Defendant was deliberately indifferent to his serious medical needs with respect to the treatment of his severed

finger and the delay in treatment. Defendant moves for summary judgment on the deliberate indifference claim, arguing that his actions were appropriate when considering all of the circumstances surrounding the incident and the manner in which Defendant acted regarding Plaintiff to receive medical treatment.

Defendant concedes that severance of a portion of Plaintiff's finger is an objectively serious medical need, however, Defendant is still entitled to qualified immunity because there is no evidence in the record that he deliberately disregarded that need.  Defendant testified that he did not see the severed portion of Plaintiff's finger on the floor.  Furthermore, immediately after the altercation Defendant went to his supervisor and reported that he and Officer Loomes had been assaulted, that the food port was still open and that Plaintiff needed to be seen by medical personnel.  The record therefore does not support Plaintiff's claim.  Accordingly, Defendant is entitled to qualified immunity regarding this claim of deliberate indifference.  See *Id*., 707 F.3d at 990-991.

## Conclusion

Based upon the foregoing, Defendant is entitled to summary judgment on Plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary

Judgment, [Doc. No. 81], is **GRANTED**.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 31st day of March, 2013.

                                                                                                              _____
                                                                                                             HENRY EDWARD AUTREY
                                                                            UNITED STATES DISTRICT JUDGE